**Barbara PADILLA, f/k/a Barbara Houle, Plaintiff,**

v.

**BUFFALO STATE COLLEGE FOUNDATION, INC., d/b/a Families United Prevention Resource Center, Defendant.**

**No. 95–CV–292H.**

United States District Court,
W.D. New York.

Jan. 28, 1997.

---

Deanna Marie Galla, Siegel, Kelleher & Kahn, Buffalo, NY, for Plaintiff.

Michael Beilewech, Jr., Magavern, Magavern & Grimm, L.L.P., Buffalo, NY, for Defendant.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

The parties have consented to have the undersigned conduct any and all proceedings in this case, including trial and order of entry of final judgment, in accordance with 28 U.S.C. § 636(c). Defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, defendant's motion is denied.

### BACKGROUND

This action was filed on April 17, 1995. Plaintiff claims that she was denied employment by defendant, Buffalo State College Foundation; Inc. d/b/a Families United Prevention and Resource Center ("Families United"), because of her association with her disabled child, in violation of Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, 42 U.S.C. §§ 1981 and 1981(a), and the New York State Human Rights Law, N.Y. Exec. Law § 296.

The following facts are not disputed. In approximately October or November of 1993 she interviewed for a position at Families

United as a "family mentor." At the time of the interview, plaintiff advised defendant that her daughter, Christina Houle, suffers from serious medical problems including epilepsy, Von Hillebrand's blood disease, asthma and chronic Epstein–Barr virus. In approximately January of 1994, defendant offered the position to plaintiff, effective February 23, 1994. Plaintiff accepted the offer, and attended orientation beginning on January 20, 1994.

In early February of 1994, plaintiff advised defendant's Project Coordinator Rashida Williams and Associate Project Director Marcia Obermiller that she would need a week off from her employment soon after it began so that she could take her daughter to the Mayo Clinic for consultation and testing. After discussing plaintiff's request with Program Director Dr. Christopher Blodgett, Ms. Williams advised plaintiff that she would be allowed to take the week off. However, Ms. Williams further advised plaintiff that, due to the mandatory nature of the training program for family mentors, which was structured to take place during the first two months of employment, plaintiff would need to commit to a specific time frame for reporting to work (Item 14, p. 5, ¶ 8(D)).

On February 28, 1994, Ms. Williams sent a letter to plaintiff which stated as follows:

Per our telephone conversation on 2/17/94, we regret the necessity to withdraw our offer of employment as family commitments will not allow you to fulfill your job function as mentor. While we are willing to assist by allowing a short-term period of time away from the job, the indefinite nature of your circumstances has forced us to withdraw our position.

In the future, should your circumstances change, please feel free to resubmit a resume.

(Item 14, Ex. D).

On approximately April 11, 1994, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") (Item 17, Ex. C). Plaintiff alleges in her complaint that she received a "Right to Sue" notice from the EEOC, and that she filed her complaint in this action within 90 days of receipt of the notice (Item 1, ¶ 4). The right to sue notice has not been made part of the record before this court.

Plaintiff alleges that defendant's withdrawal of its offer of employment constitutes discrimination in violation of the ADA and the state Human Rights Law because it was based on plaintiff's association with her disabled daughter. Defendant moves for summary judgment on the ground that there is no evidence or inference of discriminatory animus (Item 13).

## DISCUSSION

### I. Summary Judgment.

Summary judgment is appropriate if the pleadings, discovery materials, and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); Coach Leatherware Co., Inc. v. AnnTaylor, Inc., 933 F.2d 162, 166–67 (2d Cir.1991). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., supra, 477 U.S. at 248, 106 S.Ct. at 2510; see Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Once the moving party has met its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a "metaphysical doubt" concerning the facts, or on the basis of conjecture or surmise. Bryant v. Maffucci, supra (citing Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). In order to avoid summary judgment, the nonmoving party is under the obligation "to make a sufficient showing on an essential element of

[its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Burke v. Bevona,* 931 F.2d 998, 1001 (2d Cir.1991). "Entry of summary judgment indicates that no reasonable jury could return a verdict for the losing party." *Coach Leatherware, Inc. v. AnnTaylor, Inc., supra,* 933 F.2d at 167. Stated slightly differently, "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1224 (2d Cir.1994).

In *Gallo,* the Second Circuit explicitly cautioned trial courts to use extra care when deciding whether to grant summary judgment in employment discrimination cases. This is because, usually, the ultimate issue to be resolved in such cases is the employer's intent, an issue not particularly suited for summary adjudication. *Id,; see also Meiri v. Dacon,* 759 F.2d 989, 997 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). As stated by the court:

> Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination. . . . [T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution. . . . It must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute.

*Gallo, supra,* 22 F.3d at 1224.

In this case, the substantive law is the ADA.

## II. ADA.

The ADA prohibits employers from taking adverse employment action not only against "a qualified individual with a disability because of the disability of such individual . . . ," 42 U.S.C. § 12112(a), but also against qualified individuals "because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4); 29 C.F.R. § 1630.8 (1996); *Tyndall v. National Educ. Centers, Inc. of California,* 31 F.3d 209, 214 (4th Cir.1994). More specifically, the ADA's interpretive guidelines provide that an employer may not make decisions based on the "belie[f] that the [employee] would have to miss work" in order to take care of a disabled person. 29 C.F.R. § 1630, App. (1996).

When analyzing employment discrimination claims under the ADA, courts apply the same three-part test announced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), that they apply to most other kinds of statutory discrimination claims. *See, e.g., Duprey v. Prudential Ins. Co. of America,* 910 F.Supp. 879, 883 (N.D.N.Y.1996)(citing *Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 721–22 (2d Cir. 1994) (discrimination claim brought under the Rehabilitation Act), *cert. denied,* —— U.S. ——, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995)). Under this test, the plaintiff first bears the burden of proving, by a preponderance of the evidence, a *prima facie* case of discrimination. *Lopez v. Metropolitan Life Ins. Co.,* 930 F.2d 157, 160–61 (2d Cir.), *cert. denied,* 502 U.S. 880, 112 S.Ct. 228, 116 L.Ed.2d 185 (1991); *Passonno v. State Univ. of N.Y. at Albany,* 889 F.Supp. 602, 606 (N.D.N.Y.1995). To establish a *prima facie* case, plaintiff must show that (1) she was within the class of persons protected by the statute, (2) she suffered an adverse employment action, (3) she was qualified to perform the duties required of the position, and (4) her discharge occurred "under circumstances giving rise to an inference of discrimination." *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 36 (2d Cir.1994); *Passonno, supra,* 889 F.Supp. at 606.

Plaintiff has clearly established her *prima facie* case. Under the *McDonnell Douglas* test, the burden therefore shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its adverse employ-

ment action. *McDonnell Douglas, supra,* 411 U.S. at 802, 93 S.Ct. at 1824; *Passonno, supra,* 889 F.Supp. at 607–08. To satisfy this burden, the defendant need "only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 257, 101 S.Ct. 1089, 1095–96, 67 L.Ed.2d 207 (1981). If the defendant produces such evidence, then the plaintiff bears the "ultimate burden" to show that the defendant's proffered reasons for the discharge were "a pretext for discrimination." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993); *Burdine, supra,* 450 U.S. at 253, 101 S.Ct. at 1093–94. To carry this burden, the plaintiff must prove "both that the [articulated] reason was false, and that discrimination was the real reason." *St. Mary's, supra,* 509 U.S. at 515–16, 113 S.Ct. at 2752.

In support of its summary judgment motion in this case, defendant argues that, "[w]hen the hirer and firer are the same individual, there is a powerful inference relating to the 'ultimate question' that discrimination did not motivate the employer...." (ADEA), *quoted in Tyndall v. National Education Centers, supra,* 31 F.3d at 214–15; *see also Mitchell v. Data General Corp.,* 12 F.3d 1310, 1318 (4th Cir.1993)(same); *LeBlanc v. Great American Ins. Co.,* 6 F.3d 836, 847 (1st Cir.1993)(same), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994); *Lowe v. J.B. Hunt Transport, Inc.,* 963 F.2d 173, 174–75 (8th Cir.1992)(same). According to defendant, because the decision to withdraw plaintiff's employment offer was made by the same person who hired her in the first place—*i.e.,* Dr. Blodgett—the same "powerful inference" of non-discrimination can be applied in this case as was applied by the circuit courts in *Tyndall* and the other cases cited therein.

As stated by the Fourth Circuit in the *Proud* case:

The relevance of the fact that the employee was hired and fired by the same person within a relatively short time span comes at the third stage of the [*McDonnell Douglas*] analysis.... [T]his fact creates a strong inference that the employer's stated reason for acting against the employee is not pretextual. The plaintiff still has the opportunity to present countervailing evidence of pretext, but in most cases involving this situation, such evidence will not be forthcoming. In short, employers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing.

*Proud v. Stone, supra,* 945 F.2d at 798.

Defendant argues that because Dr. Blodgett made both the decision to offer plaintiff the mentor job and the decision to withdraw the offer, plaintiff cannot meet her "ultimate" *McDonnell Douglas* burden of showing that defendant's true reason for withdrawing the offer was because of plaintiff's "relationship or association" with her disabled daughter. I do not find this argument persuasive. For one thing, in each of the circuit court cases cited above, the inference drawn from the fact that the same person both hired and fired the plaintiff bolstered the respective employer's other asserted nondiscriminatory reasons for the firings. *See, e.g., Tyndall, supra,* 31 F.3d at 214 (undisputed record of plaintiff's extended absences in connection with her actual statement that she would, in fact, have to miss additional work in order to be with her disabled son); *Mitchell, supra,* 12 F.3d at 1316 (undisputed record of plaintiff's failure to perform at expected levels of upper management position); *LeBlanc, supra,* 6 F.3d at 846–47 (substantial evidence of employer's economic difficulties to justify reduction-in-force); *Lowe, supra,* 963 F.2d at 174 (evidence suggesting plaintiff's falsification of a petty-cash report); *Proud, supra,* 945 F.2d at 798 (evidence of enumerated job deficiencies in supervisory position). As this review shows, the adverse employment action taken in each of these cases was based for the most part on the particular employee's past record of job performance. Indeed, in the *Tyndall* case (upon which defendant primarily relies as support for its motion in this case), the Fourth Circuit specifically found that the plaintiff's "termination was not based on any assumption regarding future absences related to [her disabled son]'s care, but instead resulted from her record of past absences and her clear indication that she needed additional time off...." *Tyndall, supra,* 31 F.3d at 214; *see also Waldron v.*

*SL Industries, Inc.* 56 F.3d 491, 496 n. 6 (3rd Cir.1995)(fact that same person hired and fired plaintiff is simply evidence like any other and should not be accorded any presumptive value).

Defendant also cites Part 1630.8 of the Appendix to the "Regulations to Implement the Equal Employment Provisions of the [ADA]," which provide that an employer need not provide reasonable accommodations to a non-disabled applicant "because that duty only applies to qualified applicants or employees with disabilities. Thus, for example, an employee would not be entitled to a modified work schedule as an accommodation to enable the employee to care for a spouse with a disability." 29 C.F.R. pt. 1630.8, App. (1996)(citing legislative history); *see also Miller v. CBC Companies, Inc.*, 908 F.Supp. 1054, 1066 (D.N.H.1995)(ADA does not require employer to reasonably accommodate non-disabled employee's request for time off from work to fulfill parental obligations to disabled child). However, that section of the implementing regulations also states as follows:

> [42 U.S.C. § 12112(b)(4)] is intended to protect any qualified individual, whether or not that individual has a disability, from discrimination because that person is known to have an association or relationship with an individual who has a known disability. This protection is not limited to those who have a familial relationship with an individual with a disability. To illustrate the scope of this provision, assume that a qualified applicant without a disability applies for a job and discloses to the employer that his or her spouse has a disability. The employer thereupon declines to hire the applicant because the employer believes that the applicant would have to miss work or frequently leave work early in order to care for the spouse. Such a refusal to hire would be prohibited by this provision.

*Id.*

Based on the record in this case, I find that a genuine issue of fact exists as to whether defendant's withdrawal of its offer under the circumstances is prohibited by the ADA. The adverse employment action at issue occurred at a very early stage of the employment relationship. There is no evidence of unsatisfactory performance or repeated absenteeism, as there was in the cases relied upon by defendant in which summary judgment was granted in favor of the employer. This was plaintiff's first—and only—request for time off to attend to her parental obligations to her disabled child. The fact that the request coincided with what defendant has termed as a "mandatory" orientation or training period does not require the court to rule as a matter of law that plaintiff cannot meet her ultimate burden of proving that defendant's asserted reason was a pretext for discrimination.

In addition, there are unresolved factual issues with respect to the content and nature of the telephone discussions that plaintiff had with Ms. Williams and Ms. Obermiller in early February of 1994. Those issues, such as the specificity of plaintiff's request for time off from the job, the importance of plaintiff's attendance at that particular time, and the extent to which defendant required a specific time commitment from plaintiff in light of its knowledge of plaintiff's obligations with respect to her disabled daughter, are crucial to the factfinder's determination as to whether defendant can meet its burden of production at stage two, or whether plaintiff can meet her burden of persuasion at step three, of the *McDonnell Douglas* inquiry in this case.

Accordingly, resolving all ambiguities and drawing all inferences in favor of plaintiff, and considering the Second Circuit's admonition concerning the propriety of summary judgment in employment discrimination cases where the employer's intent is in issue, I find that defendant has failed to demonstrate the absence of genuine issues of material fact with respect to whether it had a legitimate, nondiscriminatory reason for withdrawing its job offer to plaintiff.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (Item 13) is DENIED.

**SO ORDERED.**