Margaret KENNEDY, Plaintiff,

v.

CHUBB GROUP OF INSURANCE COMPANIES and Peggy Nadbielny, Defendants.

No. CIV.A. 97–6173(MLC).

United States District Court, D. New Jersey.

Aug. 26, 1999.

Franklin C. Steinberg, III, Law Offices of Franklin C. Steinberg, III, P.C., Somerville, NJ, for Plaintiff.

Joel L. Finger, Barry Asen, Debi B. Debiak, Roberts & Finger, LLP, Parsippany, NJ, for Defendants.

## MEMORANDUM OPINION

COOPER, District Judge.

This matter comes before the Court on the motion by defendants Chubb Group of Insurance Companies ("Chubb") and Peggy Nadbielny ("Nadbielny") for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiff was employed by defendant Chubb from 1984 to 1997 as a Programmer and most recently served in the position of a "Programmer Analyst." In 1990, Chubb approved plaintiff's request to be switched from full-time employment to "short-week status" in order to allow plaintiff to care for her son who suffers from autism and a severe seizure disorder. Chubb permitted plaintiff to remain on short-week status from 1990 to January 1997.

The instant dispute arose because Chubb required plaintiff to return to full-time status in January 1997 or resign, shortly after plaintiff received her annual performance evaluation. Defendants maintain that the decision was precipitated by negative feedback from one of plaintiff's clients concerning plaintiff's work habits and capabilities. The negative feedback, in turn, was considered in connection with plaintiff's 1997 performance evaluation.

Because plaintiff's January 1997 evaluation and events leading up to that evaluation allegedly played an important role in her employer's decision to require plaintiff to return to full-time status, we will examine the facts presented in greater detail. The evidence shows that Chubb employees receive performance reviews generally on

an annual basis. (Aff. of Barbara Nisivoccia ¶ 9.) An employee can receive one of six ratings regarding whether they have met their performance goals. From best to worst, the ratings are: "Exceeded All," "Exceeded Some," "Met All," "Met Most," "Met Some," and "Did Not Meet." (*Id.*) Prior to receiving performance reviews, employees are required to complete self evaluation forms so that supervisors are aware of the employees' evaluations of their own performances. (*Id.*)

At some point after receiving their performance reviews, employees are required to meet with their supervisors to complete a "competency assessment" form. The "competency assessment" was introduced in mid–1996 as a tool used to facilitate discussions between employees and their supervisors concerning employees' development needs and performance goals for the upcoming year.

Because 1996 was the first year that the "competency assessment" was utilized, plaintiff's evaluation process was sequenced differently that year. In September 1996, plaintiff and her supervisor, defendant Nadbielny, met to discuss plaintiff's competency assessment. Nadbielny gave plaintiff a "Met Most" rating, one level higher than plaintiff's prior evaluations. Both Nadbielny and plaintiff characterize the competency assessment as "basically positive." (Nadbielny Aff. ¶ 6.) Plaintiff certifies that at their meeting, Nadbielny suggested that she try to improve her response time on telephone calls. (Kennedy Aff. ¶ 12.) Indeed, a review of the competency assessment form demonstrates that under the category "customer focus," Nadbielny stated that "it is important for [plaintiff] to strive for quick turnaround on questions, problems and let customers know the nature of her assignments." (Decl. of Franklin Steinberg, Esq. ("Steinberg Decl."), Ex. H.)

In October 1996, shortly after plaintiff's competency assessment, Nadbielny's supervisor Linda Foell received negative feedback from one of plaintiff's clients about plaintiff. Specifically, the client allegedly told Foell that plaintiff's overall service was poor, she did not understand the business, and she did not promptly return telephone calls. (Foell Aff. ¶ 2; Nadbielny Aff. ¶ 7.) Plaintiff spent more than one-half of her time working on matters which concerned the particular client who complained about plaintiff's work habits. (Nadbielny Aff. ¶ 7.)

Shortly after Foell and Nadbielny learned of the client's dissatisfaction with plaintiff's performance, in November 1996, Chubb announced an overall 5 percent reduction-in-force ("RIF") in plaintiff's department, ITC. The RIF was to occur in the beginning of 1997. Also during that period, plaintiff was asked to complete a self evaluation in anticipation of her formal evaluation in January 1997. Plaintiff's self evaluation, completed on December 3, 1996, rated herself at a 4.11, which translated into an "Exceeded Some" rating.

Plaintiff and Nadbielny met on December 23, 1996 to discuss plaintiff's self evaluation, and Nadbielny told plaintiff that it would be necessary for plaintiff to reevaluate her performance. Nadbielny told plaintiff at that time that her supervisor had received negative complaints about plaintiff. Specifically, Nadbielny certifies that she told plaintiff that "her customers had complained about her and had no confidence in her, that her work should be better, that she had to be more productive." (Nadbielny Aff. ¶ 9.) Plaintiff certifies that prior to this time, the only specific comment that was made to her was to be quicker to return phone calls. (Kennedy Aff. ¶ 23.) Plaintiff further states that the comment regarding the prompt return of telephone calls was only made "in passing." (*Id.*) Plaintiff certifies that in the interim period between the competency assessment and her self evaluation, plaintiff received no adverse comment on her job performance (presumably other than the reference to returning phone calls more promptly). (Kennedy Aff. ¶ 10.)

Plaintiff had a formal evaluation in January 1997, in which she received a "Met

Some" rating. The evidence demonstrates that Foell and Nadbielny disagreed about the rating plaintiff should have received. Foell thought plaintiff should have received a "Met Some" rating and Nadbielny thought a "Met Most" score was appropriate. Nadbielny eventually agreed with Foell because Foell warned Nadbielny that her own evaluation could be negatively affected if she did not give plaintiff a "Met Some" rating. (Nadbielny Aff. ¶ 10.) After Nadbielny determined that she was going to give plaintiff a "Met Some" rating, Nadbielny was instructed to meet with plaintiff and revise the competency assessment plaintiff received in September 1996 downward to reflect the latest evaluation. (*Id.* ¶ 11.) Shortly thereafter, the competency assessment was revised downward. With respect to plaintiff's score in the "customer focus" category, it appears that plaintiff's score was reduced from 3.5 to 1.5. (Nadbielny Aff., Ex. H: revised competency assessment.)

Plaintiff met with Nadbielny and Barbara Nisivoccia, a Human Resources Manager at Chubb, on January 14, 1997 after plaintiff's 1997 performance evaluation was completed. Plaintiff was informed at that time that the company was going to require plaintiff to return to full-time status. (Nadbielny Aff. ¶ 11–13.)

Plaintiff maintains that her employer's ultimatum to return to full-time status left her with no option other than to leave her employment at Chubb. Plaintiff argues that her supervisors were aware of her situation at home and the fact that plaintiff needed to remain on short-week status to enable her to care for her son. Plaintiff contends that by January 1997, her short-week worker status "was the status quo, an accepted term and condition of her employment that was tacitly acknowledged by both parties to the employment relationship." (Pl.'s Br. in Opp'n at 9.) Plaintiff resigned from her position at Chubb in January 1997.

After exhausting her available administrative remedies, plaintiff filed the instant eleven-count Complaint asserting claims against Chubb and Nadbielny under the following theories of liability: (1) Count I: discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (2) Count II: age discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"); (3) Count III: associational disability discrimination in violation of the Americans with Disabilities Act ("ADA"); (4) Count IV: associational disability discrimination in violation of the NJLAD; (5) Count V: common law claim of "fraudulent performance violation;" (6) Count VI: defamation; (7) Count VII: breach of the implied covenant of good faith and fair dealing; (8) Count VIII: breach of contract; (9) Count IX: intentional interference with contractual relations, (against Nadbielny only); (10) Count X: "violation of public policy;" and (11) Count XI: intentional infliction of emotional distress. (*See* Compl.) Defendants filed the instant motion for summary judgment, raising several arguments in support of dismissal which we will address below.

## DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its initial burden, the non-moving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial. *Id.* at 324, 106 S.Ct. 2548. "By its very terms, the standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are only those facts that might affect the outcome of the action under governing law. *Id.* at 248, 106 S.Ct. 2505; *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir.1991).

Moreover, the role of the judge at the summary judgment stage is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (citation omitted).

*A. Plaintiff's Age Discrimination Claims under ADEA (Count I) and NJLAD (Count II)*

Because the proof requirements in a disparate treatment age discrimination case are the same under the ADEA and NJLAD, the Court will consider the first two counts of the Complaint together. In this connection, plaintiff claims that her employer's decision to require plaintiff to return to full-time status was motivated by age-based discriminatory animus.

The substantive provision of the ADEA provides in pertinent part:

It shall be unlawful for an employer—
(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms conditions or privileges of employment because of such individual's age.

29 U.S.C. § 623(a)(1). Plaintiff's theory of liability appears to be that her status as a short-week worker was a "term, condition or privilege of employment" at Chubb, and that her employer's conduct in requiring her to relinquish her short-week worker status was an "adverse employment action" sufficient to trigger potential liability

under the ADEA. We will analyze plaintiff's proofs according to our understanding of the nature of her claim.

Defendants make the following arguments in support of dismissal of plaintiff's ADEA and NJLAD claims: (1) dismissal of Counts I and II as against Nadbielny is required because there is no individual liability under the ADEA and NJLAD; (2) plaintiff has produced insufficient evidence that she was qualified for her position; and (3) plaintiff has adduced insufficient evidence that the proffered reason that Chubb required plaintiff to return to work full time was a pretext, or cover-up, for age discrimination. We will address each argument in turn.

■ First, we agree that the ADEA and NJLAD claims, to the extent that they are brought against Nadbielny, must be dismissed with prejudice. While it appears there is no Third Circuit precedent specifically addressing the issue of individual liability under the ADEA, numerous district courts within this circuit have found that there is no individual liability under the ADEA. We agree with the reasoning employed by those other district courts in reaching their conclusion on this issue. *See, e.g., Cohen v. Temple Physicians*, 11 F.Supp.2d 733, 736 (E.D.Pa.1998) (no individual liability); *Moore v. Acme Corrugated Box Co., Inc.*, No. 97–2150, 1997 WL 535906, at *2 (E.D.Pa. Aug. 4 1997) ("The issue is well settled that there is no individual liability under the ADEA."); *DeJoy v. Comcast Cable Comm. Inc.*, 941 F.Supp. 468, 474–75 (D.N.J.1996); *cf. Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1077 (3d Cir.1996) (en banc) (no individual liability under Title VII), *cert. denied*, 521 U.S. 1129, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997).

■ Similarly, unless liability under NJLAD is imposed under § 10:5–12(e), the section which prohibits individuals from aiding and abetting another's violation of NJLAD, the Third Circuit has held that there is no individual liability for supervisors under § 10:5–12(a) of the NJLAD.

*See Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 125 (3d Cir.1999). Here, there is no indication in the summary judgment record or in plaintiff's brief in opposition to the motion that plaintiff's NJLAD claim against Nadbielny is predicated upon a theory of aiding and abetting prohibited by N.J.S.A. § 10:5–12(e). Moreover, we do not find plaintiff's blanket reference to the "New Jersey Law Against Discrimination" in Count II of the Complaint to be a sufficient basis, standing alone at this stage of the proceeding, to keep Nadbielny as a defendant in this lawsuit. *See Geary v. Visitation of the Blessed Virgin Mary Parish Sch.*, 7 F.3d 324, 331 (3d Cir.1993) (court dismissed claim where plaintiff failed to meet burden under Rule 56(e)).

 Turning next to the question of whether dismissal of Counts I and II is appropriate as to defendant Chubb, our inquiry will focus upon Chubb's argument that there is insufficient evidence that its purported reason for requiring plaintiff to return to work full time was a pretext for age discrimination.[1] Chubb has articulated its reason for requiring plaintiff to return to full-time status or leave Chubb's employment. Specifically, in light of customer complaints about plaintiff's performance, plaintiff's supervisors certify that the company wanted plaintiff to return to work full time so that she could improve her performance more quickly. (Defs.' Br. in Supp. at 15; Nadbielny Aff. ¶¶ 7–15; Nisivoccia Aff. ¶¶ 14–20; Foell Aff. ¶¶ 6–7.) It is clear that Chubb has satisfied its burden of producing a nondiscriminatory reason for its decision in that regard.

 Under the familiar *McDonnell Douglas* burden shifting paradigm applicable to plaintiff's ADEA and NJLAD claims, once the employer articulates a legitimate reason for the unfavorable employment decision, "the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual." *Id.* At trial, the plaintiff must convince the finder of fact "both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The factfinder's rejection of the employer's proffered reasons allows, but does not compel, judgment for the plaintiff. *Sheridan*, 100 F.3d at 1072; *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994) (citing *Hicks*, 509 U.S. at 511, 113 S.Ct. 2742). The test is whether

1. Chubb's initial argument, namely that plaintiff cannot establish a prima facie case of discrimination, is without merit. Chubb argues that plaintiff cannot demonstrate that she was qualified for her position as a Programmer Analyst because she would not return to full-time employment as Chubb requested. The qualification element is part of the plaintiff's prima facie case in order to dispel any question as to the plaintiff's objective qualifications to perform the job he or she sought. In other words, in determining whether plaintiff has demonstrated that she was "qualified" for the position, the district court must consider whether the plaintiff has the objective experience and education necessary to qualify as a viable candidate for employment. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir.1995). Because of the nature of the adverse employment action challenged here, the relevant inquiry is whether plaintiff had the objective experience and education for her position as a Programmer Analyst on short-week worker status. *See id.* That plaintiff had sufficient education and experience for her position appears uncontested. Moreover, to the extent that any argument could be made that plaintiff was not "qualified" to continue in her position part-time because of her performance problems, that argument is best considered at the latter stage of our analysis when we must examine the legitimacy of Chubb's reasons for requiring plaintiff to resume full-time status or face termination. *See id.* We note, however, that our ruling that summary judgment is not proper on this point should not be construed as a ruling that plaintiff was qualified as a matter of law.

For purposes of this motion, the remaining aspects of plaintiff's prima facie case are not in dispute. Plaintiff is in the protected class (over 40 years old); plaintiff suffered an adverse employment action (the ultimatum to return to full-time status or leave Chubb's employment); and plaintiff's duties were reassigned to someone outside the protected class (an individual 35 years of age).

the plaintiff ultimately convinces the fact-finder that the employment decision was caused by bias; therefore, both the plaintiff's prima facie case and the factfinder's rejection of the employer's proffered reasons are circumstantial evidence of unlawful discrimination. *Fuentes*, 32 F.3d at 763 (citing *Hicks*, 509 U.S. at 511, 113 S.Ct. 2742).

When the defendant has answered the plaintiff's prima facie case with legitimate, nondiscriminatory reasons for its decision, the plaintiff may defeat a motion for summary judgment by pointing:

> to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. In other words, because the factfinder may infer from the combination of the plaintiff's prima facie case and its own rejection of the employer's proffered non-discriminatory reasons that the employer unlawfully discriminated against the plaintiff and was merely trying to conceal its illegal act with the articulated reasons, a plaintiff who has made out a prima facie case may defeat a motion for summary judgment by either (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.

*Id.* at 764 (citing *Hicks*, 509 U.S. at 511, 113 S.Ct. 2742; *Ezold v. Wolf, Block, Schorr & Solis–Cohen*, 983 F.2d 509, 523 (3d Cir.1992), *cert. denied*, 510 U.S. 826, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993)). The Third Circuit has most recently characterized this standard as a two-pronged analysis: (1) is there evidence from which a factfinder could reasonably disbelieve the employer's articulated reason; and/or (2) is there evidence from which a factfinder could infer that discrimination was more likely than not a motivating or determina-

tive cause of the adverse employment action. *See Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1111 (3d Cir.1997) (en banc).

■ Therefore, under the framework developed by the Third Circuit in *Sheridan* and *Fuentes*, to survive summary judgment, plaintiffs must either:

> (i) ... present sufficient evidence to meaningfully throw into question, i.e., to cast substantial doubt upon, [defendants'] proffered reasons for not hiring [them] (e.g., by painting them as weak, implausible, contradictory, or incoherent), or (ii) ... come forward with sufficient evidence from which a factfinder could reasonably conclude that an illegitimate factor more likely than not was a motivating or determinative cause of the adverse employment decision (e.g., by showing that the employer in the past had subjected him to unlawful discriminatory treatment, that the employer treated other, similarly situated persons not of his protected class more favorably, or that the employer discriminated against other members of his protected class or other protected categories of persons).

*Fuentes*, 32 F.3d at 761–62; *see also Sheridan*, 100 F.3d at 1072 (endorsing *Fuentes* summary judgment standard).

Plaintiff argues that certain facts and circumstances surrounding plaintiff's last months of employment with Chubb would, when considered together, permit a factfinder to conclude that her employer's articulated reason for requiring her to return to work full time was a pretext for age discrimination. In this regard, plaintiff seeks to "throw into question, i.e., to cast substantial doubt upon," Chubb's proffered reasons for requiring plaintiff to return to full-time status by painting them as weak, implausible, contradictory, or incoherent. *See Keller*, 130 F.3d at 1108–09; *Fuentes*, 32 F.3d at 764.

First, plaintiff attempts to paint the reason as "weak" or "inconsistent" with the true state of facts by noting that despite

the fact that her supervisors received the negative evaluation of plaintiff's performance by her client in October 1996, she was not informed of the specifics of that complaint until December 1996 when she met with Nadbielny to discuss her self evaluation. Plaintiff argues that the absence of criticism during that time period has probative value because (1) she continued to work with the client during that time period; (2) plaintiff's supervisors admit that the criticism was "harsh;" and (3) a large part of plaintiff's work was with that client. We understand that the inference that plaintiff seeks to draw is that Chubb's reliance upon the client's criticism as a basis for requiring her to return to work full time is inconsistent with the manner in which her supervisors reacted to the criticism when they first learned of the problem. Plaintiff argues that the supervisors' failure to inform plaintiff immediately about the criticism demonstrates an inconsistency which could, in turn, lead to the conclusion that the perceived performance problem was not as significant as it was made out to be when it came time for plaintiff's formal evaluation in January 1997.

Next, plaintiff asks the Court to put the series of events in context: in late October, early November 1996, Chubb announced a 5 percent reduction in force which was to occur in the first quarter of 1997. (Nadbielny Dep. at 130.) Plaintiff's supervisors believed at the time the RIF was announced that one of the criteria for determining which employees would remain with the company and which would be laid off was the employees' performance records. (*Id.* at 131.) Yet, despite the fact

that plaintiff's performance problems were known to her supervisors as early as October 1996, they did not. choose to inform plaintiff until December 1996. Plaintiff argues that the timing of the performance evaluation did not provide plaintiff with a meaningful opportunity to respond or attempt to correct her client's negative perception prior to the RIF which was to occur in early 1997. (Pl.'s Br. in Opp'n at 22.)

Plaintiff also points to the fact that Nadbielny believed at one point that she was told by her superior that plaintiff was to be included in the 5 percent RIF.[2] Specifically, Nadbielny's notes to herself dated January 6, 1997 were made in preparation for her meeting with plaintiff to discuss plaintiff's performance evaluation. In her notes, she recorded that she asked Foell what she should put as the objectives in plaintiff's "Performance Improvement Plan" ("PIP"),[3] and queried what would happen if plaintiff did well on the PIP. The notes then state:

> She [Foell] said that it was ok if PK did well on the Performance Improvement Plan. (At one point, I was told that she was to fail the PIP since she was to be part of the 5 percent.)

(Steinberg Decl. Ex. M; *see also* Nadbielny Dep. at 145.) Recognizing that Nadbielny now takes the position in this litigation that her statement in that regard was erroneous, plaintiff nonetheless maintains that "the jury must have the opportunity to evaluate the demeanor and credibility of the witnesses on all of these issues." (*Id.*)

We have considered Chubb's arguments and evidentiary submissions in support of

---

**2.** When the RIF was first announced, plaintiff's supervisors were unsure of how the determination as to which employees would be included would be made. It was later resolved that the criteria for determining which employees were included, as well as the ultimate decision as to which employees would be terminated, was left to the Human Resources Department at Chubb. However, at the time that Nadbielny's superior allegedly stated that plaintiff would likely be part of the 5 percent RIF, it is not clear from the record

that the superior would have known that she did not have the ability to determine who would be terminated under the 5 percent reduction plan.

**3.** After plaintiff was informed of her "Met Some" rating at her evaluation, her supervisor intended to place her on a "Performance Improvement Plan" which would outline the specific areas where plaintiff needed to improve.

its motion for summary judgment. (*See* Defs.' Br. in Supp. at 15–19; Defs.' Reply Br. at 1–6.) Similarly, we have reviewed plaintiff's proffers and considered them against the backdrop of relevant precedent. While we recognize that the issue is close, we conclude that plaintiff has presented sufficient evidence to present the pretext issue to the jury. Specifically, we find that the summary judgment record demonstrates sufficient weaknesses and/or inconsistencies in Chubb's proffered nondiscriminatory reason to support the conclusion that the reason given was not the real reason for the employer's actions. Thus under the Third Circuit's reasoning in *Sheridan*, plaintiff has proffered sufficient evidence to defeat the instant motion for summary judgment. *See Sheridan*, 100 F.3d at 1071; *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir.1996) ("If there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment."); *Sempier*, 45 F.3d at 731; *cf. Keller*, 130 F.3d at 1111 (court affirmed summary judgment for employer, finding that employer had particularly strong legitimate nondiscriminatory reason for discharge, namely his failure to meet financing goal that plaintiff himself set for the company, and it was undisputed that plaintiff was aware of the goal he was to achieve in that connection; court stated "in light of the patent importance of the $1.5 billion goal, and in light of the 'steady questioning' of [plaintiff] about this matter, the absence of explicit criticism cannot reasonably be viewed as having great importance.").

 The Court finds that there is sufficient evidence from which a reasonable jury could conclude that Chubb's proffered reason for requiring plaintiff to return to work full time is not "worthy of credence." *Sempier*, 45 F.3d at 730. Plaintiff has met her burden at summary judgment by producing evidence which undermines Chubb's position that the magnitude of plaintiff's performance deficiencies

prompted its decision to require plaintiff to return to full-time status or resign her position at Chubb. *See Sheridan*, 100 F.3d at 1072; *see also Josey v. J.R. Hollingsworth Corp.*, 996 F.2d 632, 642 (3d Cir.1993) ("The total circumstances surrounding [plaintiff's] termination challenge the credibility of [defendant's] proffered reason for his dismissal."). This Court is mindful of the jury's role in determining the ultimate question in employment discrimination cases:

> The role of determining whether the inference of discrimination is warranted must remain within the province of the jury, because a finding of discrimination is at bottom a determination of intent. In making that finding, the jury must perform its traditional function of assessing the weight of the evidence, the credibility of the witness through observation of both direct testimony and cross-examination at trial, and the strength of the inferences that can be drawn from the elements of the prima facie case and the evidence that undermines the employer's proffered reasons for its actions. This is uniquely the role of the factfinder, not the court.

*Sheridan*, 100 F.3d at 1071; *see also Aman*, 85 F.3d at 1082 ("Courts today must be increasingly vigilant in their efforts to ensure that prohibited discrimination is not approved under the auspices of legitimate conduct, and 'a plaintiff's ability to prove discrimination circumstantially, must not be crippled ... because of crabbed notions of relevance or excessive mistrust of juries.'") (citations omitted).

In our view, the better approach in cases such as this is to permit plaintiff to pursue her discrimination claim at trial so that a jury may evaluate the proofs presented on this issue. *See Irwin v. Runyon*, No. 950655, 1996 WL 617488, at *4–5 (M.D. Pa. June 21, 1996) (on motion for summary judgment in hostile work environment case, court noted that the issue was "close" and that it had "serious doubts about whether plaintiffs were harassed because

of their gender," but nonetheless denied defendant's motion for summary judgment on plaintiffs' discrimination claim). Here, the Court is satisfied that plaintiff's evidence meets the "threshold requirement" of casting sufficient doubt upon the legitimacy of Chubb's reason for requiring plaintiff to return to work full time. The Court will deny defendant Chubb's motion for summary judgment on Counts I and II of the Complaint. Of course, nothing in this Memorandum Opinion should be construed to prevent the Court from revisiting this issue at the appropriate time during trial, if necessary. *See* Fed.R.Civ.P. 50(a).

**B. Counts III and IV of the Complaint**

Counts III and IV of the Complaint allege that Chubb's ultimatum which required plaintiff to resume a full-time work schedule violated the ADA and the NJLAD. Plaintiff claims that her supervisors were aware that her son was disabled and needed plaintiff's assistance and thus should have allowed her to remain on short-week status. Plaintiff claims that she is protected from such discriminatory conduct by the ADA's associational discrimination provision. She also argues that the NJLAD should be interpreted to prohibit Chubb's discriminatory conduct given its severity.

■■■ Plaintiff cites no controlling authority for her argument that the NJLAD should be interpreted by this Court to prohibit discrimination against an employee based upon that employee's association with an individual with a disability.[4] Rath-

er, she relies upon the fact that NJLAD "is a remedial statute that should be broadly construed to further the beneficial purposes of eliminating discrimination in the workplace." (Pl.'s Br. in Opp'n at 27.) The Court declines plaintiff's invitation to create a new cause of action under state law where there is no indication that the New Jersey Supreme Court would endorse such a position. Accordingly, we will grant Chubb and Nadbielny's motion for summary judgment on Count IV of the Complaint to the extent that it is premised upon a theory that Chubb and Nadbielny violated the NJLAD by discriminating against plaintiff based upon her association with her disabled son.[5]

■■■ Turning to the question of whether the ADA prohibits Chubb's conduct in this connection, we must examine plaintiff's legal theory concerning the scope of the associational provision of the ADA, 42 U.S.C. § 12112(b)(4).[6] It appears from plaintiff's opposition brief that her claim in this regard is that Chubb approved plaintiff's short-week status in order to allow her to care for her disabled son. From that premise, it seems that plaintiff is arguing that the failure to continue to permit plaintiff's accommodation (short-week worker status) violates the ADA's associational discrimination provision. (*See* Pl.'s Br. in Opp'n at 26 (noting that Chubb should be estopped from denying that plaintiff had the right to reasonable accommodation).) Plaintiff argues that "this matter presents a policy issue of public

---

4. Under the NJLAD, it is unlawful for an employer "to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment [on discriminatory grounds] ... or to discriminate against [an] individual in compensation or in terms, conditions or privileges of employment." N.J.S.A. 10:5–12a. The NJLAD expressly extends such protection to the disabled, "unless the nature and extent of the handicap reasonably precludes the performance of the particular employment." N.J.S.A. 10:5–4.1.

5. Defendant Nadbielny is also entitled to summary judgment on Count IV because there is

no individual supervisory liability under NJLAD § 10:5–12(a). *See supra.*

6. Section 11212(b)(4) of the ADA provides in pertinent part:

(b) Construction
As used in subsection (a) of this section, the term "discriminate" includes—
. . . .
(4) excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association.
*Id.*

importance which the court should not decide absent a full trial record." (*Id.*)

 Plaintiff is correct in her assertion that there is a dearth of case law interpreting ADA's prohibition on discrimination based upon one's association with an individual with a disability. *See* 42 U.S.C. § 12112(b)(4). However, the relevant authorities demonstrate that plaintiff's theory of liability in this case is untenable. Plaintiff essentially argues that Chubb was required to accommodate her request for part-time employment in order for her to be able to care for her son. However, courts which have interpreted the meaning of this provision have found that the scope of the ADA does not reach that far. Specifically § 12112(b)(4) does not mandate that an employer provide an employee without a disability with a reasonable accommodation to enable the employee to care for a disabled individual with whom the employee is associated. *See Hartog v. Wasatch Academy*, 129 F.3d 1076, 1084–85 (10th Cir.1997) (noting that the employer was not required under the ADA to provide the employee with a reasonable accommodation of his son's admitted disability (bipolar disorder)); *Tyndall v. National Educ. Centers*, 31 F.3d 209, 214 (4th Cir.1994) (where employee alleged that employer discriminated against her based upon her association with disabled son and evidence demonstrated that employee missed work to care for son, court found that summary judgment was appropriate; court noted that "[t]he ADA does not require an employer to restructure an employee's work schedule to enable the employee to care for a relative

with a disability"); *Padilla v. Buffalo State College Foundation*, 958 F.Supp. 124, 128 (W.D.N.Y.1997) (recognizing that employer need not provide accommodation so that employee could take care of ailing child); *Miller v. CBC Cos.*, 908 F.Supp. 1054, 1066 (D.N.H.1995) (ADA does not require employer to accommodate non-disabled employee's request for time off from work to fulfill parental obligations to disabled child). Instead, the provision prohibits employers and potential employers from taking adverse employment action because of a known disability of an individual with whom the qualified employee or applicant is known to have a relationship or association. The EEOC's Interpretive Guidance supports this interpretation of the scope of the ADA association provision. *See* 29 C.F.R. § 1630.9 App. at 349.[7]

We also note that the two Third Circuit cases cited by plaintiff do not address the question of the scope of the ADA's associational provision, and are therefore not helpful in this connection. *See Mondzelewski v. Pathmark Stores*, 162 F.3d 778 (3d Cir.1998); *Krouse v. American Sterilizer Co.*, 126 F.3d 494 (3d Cir.1997). Because we find that the ADA does not require Chubb to allow plaintiff to continue to work part time because her request in that regard is necessitated by her need to care for her disabled son, plaintiff has no claim under the associational provision of the ADA. We will grant summary judgment on Counts III and IV of the Complaint.

---

7. The EEOC Interpretive Guidance has stated that this provision prohibits employers from making decisions "based on the belief that the employee would have to miss work" in order to take care of the disabled person with whom the employee is associated. *Tyndall*, 31 F.3d at 214 (citing 29 C.F.R. 1630 App.). Assuming for the moment that plaintiff's Complaint could be construed to assert such a theory of ADA liability, there is no evidence in the record from which a reasonable jury could conclude that Chubb's decision was motivated by the company's perception concerning plain-

tiff's future attendance problems as a result of her child's condition. *Cf. Reddinger v. Hospital Central Servs.*, 4 F.Supp.2d 405, 408–09 (E.D.Pa.1998) (court permitted associational disability claim to survive motion to dismiss where complaint alleged that after plaintiff sought a temporary leave of absence from work to care for her disabled child, she was told that she would have to take an unpaid leave of absence, and upon return to her job was terminated because her employer assumed that her attendance in the future was in jeopardy).

## C. Count V: Fraudulent Performance Evaluation

 Count V, entitled "Fraudulent Performance Evaluation," states that the changes to plaintiff's performance assessments were "false and fraudulent and were designed and carried out in bad faith to create an excuse to terminate plaintiff's employment for unlawful reasons." Defendants Chubb and Nadbielny argue that the common law elements of fraud apply in this instance, and that plaintiff cannot establish the requisite elements of a deceit claim. We agree with defendants' position in this connection. *See Silvestre v. Bell Atlantic Corp.*, 973 F.Supp. 475, 485 (D.N.J.1997) (applying common law elements of legal fraud under New Jersey law in this context; court required proof of (1) a material misrepresentation, (2) of a presently existing or past fact, (3) made with knowledge of its falsity, (4) with the intention that the other party rely thereon, (5) resulting in reliance by that party to his detriment), *aff'd without op.*, 156 F.3d 1225 (3d Cir.1998); *see also In re Resorts Int'l, Inc.*, 181 F.3d 505, 509 (3d Cir.1999) (setting forth elements of common law fraud under New Jersey law; plaintiff is required to prove (1) that the defendant made a material misrepresentation of a presently existing or past fact, (2) which he knew or believed to be false, (3) upon which the defendant intended the plaintiff to rely, and (4) upon which the plaintiff reasonably relied, and (5) with resulting damages) (citing *Jewish Ctr. v. Whale*, 86 N.J. 619, 432 A.2d 521, 524 (1981)); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1182 (3d Cir.1993) (setting forth elements of fraud under New Jersey law).

Here, it appears that the statements conveyed in the performance evaluations which form the basis of this claim are statements of opinion rather than fact. Moreover, there is no proof that the statements of fact, to the extent that there are such statements in the evaluations, amounted to misrepresentations. Similarly, there is no evidence of reliance on plaintiff's part. *Silvestre*, 973 F.Supp. at 485. We will dismiss this claim with prejudice. (*See* Kennedy Dep. at 334–35 (admitting that she did not rely upon performance appraisal and in fact disagreed with it).)

## D. Count VI of the Complaint: Defamation

 Count VI states that certain false statements in the performance evaluations were published by the defendants, and that the publication defamed plaintiff because the statements "cast her in a false light in the eyes of workers and the entire Chubb family." (Compl.¶¶ 54–56.) As a result thereof, plaintiff states that she has suffered "economic and emotional damage." (*Id.* ¶ 57.) Plaintiff does not, however, provide specific instances of misstatements of fact in the 1997 performance evaluation and competency assessment. Rather, her brief generally states that the "defendants' statements in the performance evaluation and revised competency assessment were false." (Pl.'s Br. in Opp'n at 30.) Plaintiff also refers back to her prior arguments in her brief wherein she appears to argue that the ranking of plaintiff as a "Met Some" rather than a "Met Most" is an actionable defamatory falsehood. (*See id.* at 28, 30.)

 Chubb and Nadbielny are entitled to summary judgment on plaintiff's defamation claim. First, it is not entirely clear to the Court that the statements made in the performance evaluations upon which plaintiff predicates this claim are statements of fact or opinion. Of course, only statements of fact are actionable under New Jersey law. *See Lutz v. Royal Ins. Co. of Am.*, 245 N.J.Super. 480, 491, 586 A.2d 278, 283 (App.Div.1991) (noting that threshold issue in a defamation action is whether the language in question is reasonably susceptible to a defamatory meaning; a defamatory meaning will be found only if the language asserts or implies a statement of fact which is damaging to reputation); *see also Lynch v. New Jersey Educ. Assoc.*, 161 N.J. 152, 735 A.2d 1129 (1999) (explaining that statements of opinion generally cannot be proven true or

false, and usually reflect a state of mind; opinion statements do not trigger liability for defamation unless they imply false underlying objective facts). Courts have found that opinions stated in performance evaluations cannot support a defamation claim. *See Baldwin v. University of Texas,* 945 F.Supp. 1022, 1035 (S.D.Tex.1996) (performance reviews are "permissible expressions of opinion and are not defamatory as a matter of law"), *aff'd,* 122 F.3d 1066 (5th Cir.1997); *Johnson v. Chesebrough–Pond's USA Co.,* 918 F.Supp. 543, 551–52 (D.Conn.) (same), *aff'd,* 104 F.3d 355, 1996 WL 734043 (2d Cir.1996).

■ Assuming *arguendo* that the statement regarding plaintiff's rating as a "Met Some" is considered to be factual in nature, the Court finds that the statements are protected in this context by a qualified privilege. *See Monroe v. Host Marriot Servs. Corp.,* 999 F.Supp. 599, 604 (D.N.J. 1998); *see also Erickson v. Marsh & McLennan Co.,* 117 N.J. 539, 563–64, 569 A.2d 793, 805 (1990). Therefore, defendants are entitled to summary judgment on this alternative basis.

■ We note parenthetically that plaintiff contends that assuming the existence of a qualified privilege, "the plaintiff is entitled to attempt to defeat it by proving abuse of the privilege, ... and 'abuse of the privilege is a question of fact for the jury.' " (Pl.'s Br. in Opp'n at 30.) The New Jersey Supreme Court requires clear and convincing evidence to establish abuse of the qualified privilege. *See Erickson,* 117 N.J. at 564–65, 569 A.2d at 806 (citing *Burke v. Deiner,* 97 N.J. 465, 481, 479 A.2d 393 (1984)). While plaintiff could in theory defeat the assertion of a qualified privilege with proof that the defendants somehow abused the privilege, there is no evidence in the record to support plaintiff's bald assertion in that regard. Accordingly, plaintiff has failed to demonstrate a genuine issue of material fact on this point, entitling defendants to summary judgment.

■ One abuses the privilege "if (1) the publisher knows the statement is false

or the publisher acts in reckless disregard of its truth or falsity; (2) the publication serves a purpose contrary to the interests of the qualified privilege; or (3) the statement is excessively published." *Williams v. Bell Tel. Lab. Inc.,* 132 N.J. 109, 121, 623 A.2d 234 (1993) (citations omitted).

Indeed, the evidence demonstrates no abuse of the privilege in that there was a limited distribution of the information to only those Chubb managers involved in evaluating plaintiff's performance. (*See* Nadbielny Aff. ¶ 17; Foell Aff. ¶ 9; Nisivoccia Aff. ¶ 22.) Moreover, while plaintiff could attempt to point to the fact that Nadbielny gave plaintiff a "Met Some" rating rather than a "Met Most" rating as proof that Nadbielny's "Met Some" rating was "false" and thus an abuse of the privilege, the "Met Some" rating was a statement of opinion rather than fact. Accordingly, the opinion that plaintiff was worthy of a "Met Some" rating, assuming *arguendo* that it was not honestly held by Nadbielny, does not demonstrate the existence of a factual issue concerning the abuse of the privilege. Parenthetically, we note in this connection that plaintiff does not appear to argue that the information relied upon in giving plaintiff that overall rating was somehow known by Nadbielny to be false, or that there was a reckless disregard for the truth of the underlying factual information. *See Lynch,* 735 A.2d 1129; *Gallo v. Princeton Univ.,* 281 N.J.Super. 134, 145–47, 656 A.2d 1267, 1274 (App.Div. 1995). Absent a genuine issue of material fact concerning defendants' abuse of the qualified privilege afforded to such statements in this context, we must grant summary judgment to defendants.

*E. Counts VII, VIII and IX of the Complaint (Breach of Implied Duty of Good Faith and Fair Dealing, Breach of Contract, and Intentional Interference with Contractual Relations)*

■ Plaintiff argues that "the corporate policies governing the short-week worker program in place at Chubb were contractual in nature." Count VII alleges

that the corporate policies governing the short-week worker program were subject to the obligation of good faith and fair dealing, and that Chubb's actions in requiring plaintiff to resume full-time employment violated that duty. (Pl.'s Br. in Opp'n at 32.) Plaintiff also appears to predicate her breach of contract claim and intentional interference with contractual relations claim upon Chubb's policy regarding the short-week worker program.

In order to demonstrate that Chubb's conduct in requiring plaintiff to relinquish her status as a short-week worker violated the duty of good faith and fair dealing, plaintiff must show that Chubb's policy concerning the short-week worker program is in the nature of a contractual obligation. *See Peck v. Imedia, Inc.,* 293 N.J.Super. 151, 168, 679 A.2d 745 (App. Div.1996) (quoting *Nolan v. Control Data Corp.,* 243 N.J.Super. 420, 429–30, 579 A.2d 1252 (App.Div.1990)) (noting that an implied obligation of good faith and fair dealing applies to those aspects of the employer-employee relationship which are governed by some contractual terms, regardless of whether that relationship is characterized generally as being "at will"). Thus the Court must determine whether Chubb's short-week worker program may be considered to be a form of employment contract such that Chubb's unilateral decision to revoke plaintiff's short-week worker status may be viewed as an actionable breach of contract.

The New Jersey Supreme Court in *Woolley v. Hoffmann–La Roche, Inc.* stated in an analogous context that in determining whether an employment contract can be implied from statements published in an employee handbook, the court must consider "the reasonable expectations of the employees." 99 N.J. 284, 491 A.2d 1257 (1985); *Witkowski v. Thomas J. Lipton, Inc.,* 136 N.J. 385, 392, 643 A.2d 546 (1994). In determining the contractual force of a just cause provision in an employee handbook, courts are required to examine the definiteness and comprehensiveness of the termination policies. Also

relevant is the context of the manual's preparation and distribution. *Witkowski,* 136 N.J. at 393, 643 A.2d 546. Still, the court has stated that an employer "may overcome the implication that its employment manual constitutes an enforceable contract" by including a disclaimer notifying employees that they may be terminated at the employer's will. *Nicosia v. Wakefern Food Corp.,* 136 N.J. 401, 412, 643 A.2d 554 (1994).

We find these principles concerning the interpretation of certain employer policies found in employment handbooks equally applicable in our case where we are called upon to determine the force and effect of Chubb's short-week worker program. In particular, it is clear that the determination of whether Chubb's short-week worker program provides to its participants enforceable contractual rights turns on the "reasonable expectation of the employee[ ]."

We conclude that the short-week worker program was not in the nature of an employment contract. In this connection, we find it significant that plaintiff's deposition testimony reveals that she was aware that her status as a short-week worker could be adjusted at any time as necessary. (*See, e.g.,* Steinberg Decl. Ex. A: Kennedy Dep. at 108–10.) In particular, when plaintiff first requested that she be considered for part-time employment, the memorandum sent in response to her inquiry indicated that the arrangement would be granted for a three month period and could "be adjusted at any time as necessary." (Nisivoccia Aff., Ex. F: Memorandum to Peggy Kennedy from Mike McClellan dated 8–22–90.) Moreover, Chubb's employment handbook, which plaintiff acknowledges receiving, (*see* Steinberg Decl., Ex. A: Kennedy Dep. at 344), contained a prominent disclaimer which provided that "Chubb reserves the right to terminate an individual's employment with or without cause, *or to change wages and/or any other term or condition of employment of any employee without any prior consultation or agreement with*

*the employee.*" (Nisivoccia Aff., Ex. C: "Employment–At–Will Statement"). Under the circumstances, we find no evidence that it would be reasonable for plaintiff to have believed that Chubb's policy concerning the short-week worker program was in the nature of an enforceable contractual obligation.

In light of the fact that plaintiff admitted at deposition that she was aware that her ability to remain a part-time employee depended on her employer's needs, in addition to the prominent disclaimer in the employment manual which plaintiff acknowledges receiving, we hold that the short-week worker program instituted by Chubb cannot be considered to have had the force of a contractual obligation. Accordingly, plaintiff's breach of contract claim (Count VIII) fails as a matter of law. For the same reason, plaintiff's breach of the implied covenant of good faith and fair dealing (Count VII) must also fail. *See Varrallo v. Hammond, Inc.*, 94 F.3d 842, 848 (3d Cir.1996). The same reasoning requires dismissal of the tortious interference with contract claim asserted against Nadbielny.[8] *See DeJoy v. Comcast Cable Comm. Inc.*, 968 F.Supp. 963, 992 (D.N.J. 1997) (noting that plaintiff's tortious interference with contract claim must be dismissed in the absence of a contract, following distinction recognized by Third Circuit in *Hammond* ). For these reasons, the Court will grant the motion for summary judgment as to Counts VII, VIII, and IX, and those claims are dismissed with prejudice as to both Chubb and Nadbielny.

*F. Counts X and XI*

Plaintiff has stipulated to the dismissal of Counts X and XI. (*See* Pl.'s Br. in Opp'n

8. The Court also notes that dismissal of the tortious interference with contract claim is warranted on an alternative basis. "A tortious interference with contract claim can only be waged against a third-party who is not a party to the contractual or economic relationship at issue." *Silvestre*, 973 F.Supp. at 486. Nadbielny, an employee working for the corporation with which the plaintiff allegedly had a contract, cannot serve as the third-

at 36.) Accordingly, those counts are dismissed with prejudice.

## CONCLUSION

The Court has considered each of the eleven counts asserted in the Complaint. We have determined that there is a genuine issue of material fact with respect to plaintiff's age-based federal and state discrimination claims. However, with respect to those claims, we have found that there is no individual liability under NJLAD or the ADEA, and that dismissal of those claims against Nadbielny is therefore appropriate. Accordingly, we will deny summary judgment as to Counts I and II of the Complaint with respect to Chubb, and grant the motion on Counts I and II with respect to Nadbielny. In addition, we have found that dismissal of the remaining aspects of the Complaint is appropriate for reasons discussed above. Thus, the Court will grant defendants' motion for summary judgment with respect to Counts III through XI of the Complaint, and dismiss those claims with prejudice.

An appropriate Order accompanies this Memorandum Opinion.

### ORDER

For the reasons expressed in the accompanying Memorandum

Opinion,

IT IS THEREFORE on this day of August, 1999 ORDERED that defendants Chubb and Nadbielny's motion for summary judgment is GRANTED IN PART AND DENIED IN PART as follows: (1) GRANTED as to defendant Nadbielny, and the Complaint is DISMISSED WITH PREJUDICE in its entirety against said

party necessary for the tripartite relationship where, as here, Nadbielny acted in the scope of her employment in allegedly "interfering" with plaintiff's short-week worker status by falsely lowering plaintiff's performance evaluations. *See id.* (dismissing same claim on same facts). Under these circumstances, Nadbielny is considered the employer for purposes of analyzing the tortious interference claim. *Id.*

individual; (2) GRANTED as to defendant Chubb with respect to Counts III through XI of the Complaint, and those aspects of the Complaint are DISMISSED WITH PREJUDICE against said entity; and (3) DENIED as to defendant Chubb with respect to Counts I and II (age discrimination claims under ADEA and NJLAD, respectively).